# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| THE FIRST, N.A. | ) | |
|        Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| P/V MARGARET TODD (O.N. 1058675), her | ) | |
| engines, tackle, apparel, appurtenances, etc., *in rem*, | ) | |
| P/V PATIENCE (O.N. 646537), her engines, | ) | |
| tackle, apparel, appurtenances, etc., *in rem*, | ) | |
| P/V POLLY-LIN II (O.N. 512323), her | ) | |
| engines, tackle, apparel, appurtenances, etc., | ) | |
| *in rem*, P/V ISLAND QUEEN (O.N. 292024), | ) | IN ADMIRALTY |
| her engines, tackle, apparel, appurtenances, etc, | ) | |
| *in rem*, P/V FISH HAWK (O.N. 254992), her | ) | |
| engines, apparel, appurtenances, etc., *in rem*, | ) | |
| P/V SCHOODIC LION (O.N. 506304), her | ) | |
| engines, tackle, apparel, appurtenances, etc., | ) | |
| *in rem*, P/V CHRISSY (O.N. 1058205), her | ) | |
| engines, tackle, apparel, appurtenances, etc., | ) | |
| *in rem*, P/V SEGUIN (O.N. 252726), her | ) | |
| engines, tackle, apparel, appurtenances, etc., | ) | |
| *in rem*,  P/V SUTTON (O.N. 1194637), her | ) | |
| engines, tackle, apparel, appurtenances, etc., | ) | |
| *in rem*,   P/V QUODDY DAM (O.N. 508529), | ) | |
| her engines, tackle, apparel, appurtenances, etc., | ) | |
| *in rem*, P/V SYLVINA W. BEAL (O.N. 208896), | ) | |
| her engines, tackle, apparel, appurtenances, etc., | ) | |
| *in rem*,  P/V SEBAGO (O.N. 296322), her | ) | |
| engines, tackle, apparel, appurtenances, etc., | ) | |
| *in rem*,  P/V SCHOODIC (O.N. 255436), her | ) | |
| engines, tackle, apparel, appurtenances, etc., | ) | |
| *in rem*,  STEVEN F. PAGELS, *in personam*, | ) | |
| DOWNEAST WINDJAMMERS CRUISE | ) | |
| LINES LLC, *in personam*. | ) | |
|        Defendants. | | |

## VERIFIED COMPAINT

NOW COMES plaintiff, The First, N.A., ("plaintiff"), by its attorneys, and for its

Verified Complaint states as follows:

## JURISDICTION AND VENUE

1.     Plaintiff's *in rem* claims against the Vessels in Counts I through XIX and plaintiff's *in personam* claim against, defendant, Steven F. Pagels, in Count XX, are cases of admiralty and maritime jurisdiction, under 28 U.S.C. § 1333, and are admiralty and maritime claims to enforce a preferred mortgage lien, within the meaning of Fed. R. Civ. P. 9(h).

2.     Plaintiff's *in rem* claims against the defendant Vessels in Counts I through XIX and plaintiff's *in personam* claim against defendant, Steven F. Pagels, in Count XX, are asserted under the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, and in particular, 46 U.S.C. § 31325(b)-(c).

3.     Plaintiff's *in personam* claims against defendant, Steven F. Pagels, in Counts XXI and defendant, Downeast Windjammers Cruise Lines LLC, in Count XXII may be brought in this Honorable Court pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367, as these claims arise out of a common nucleus of operative facts with plaintiff's *in rem* and *in personam* claims brought under the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343,  and the resolution of the factually connected claims in a single proceeding will further the interests of conserving judicial resources and fairness to the parties.

4.     Venue in this district is proper under 28 U.S.C. § 1391(b), Rule C(2)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, and the general maritime law.

## PARTIES

5.     Plaintiff is a national banking association having an office at 223 Main Street, P.O. Box 940, Damariscotta, ME 04543.

6.      The *in rem* defendant passenger vessel MARGARET TODD is a 106.1 foot vessel built by Schreiber Boats in 1997, and is documented under the laws of the United States of America and bears Official Number 1058675 ("MARGARET TODD").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

7.      The *in rem* defendant passenger vessel PATIENCE is a 72 foot vessel built in 1982, and is documented under the laws of the United States of America and bears Official Number 646537 ("PATIENCE").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

8.      The *in rem* defendant passenger vessel POLLY-LIN II is a 44 foot vessel built in 1967, and is documented under the laws of the United States of America and bears Official Number 512323 ("POLLY-LIN II").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

9.      The *in rem* defendant passenger vessel ISLAND QUEEN is a 42 foot vessel built by Beal and Bunker in 1963, and is documented under the laws of the United States of America and bears Official Number 292024 ("ISLAND QUEEN").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

10.     The *in rem* defendant passenger vessel FISHHAWK is a 41.3 foot vessel built by Johnson Boatworks in 1948, and is documented under the laws of the United States of America and bears Official Number 254992 ("FISHHAWK").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

11.     The *in rem* defendant passenger vessel SCHOODIC LION is a 62 foot vessel built by Freeport Point Shipyard in 1966, and is documented under the laws of the United States of America and bears Official Number 506304 ("SCHOODIC LION").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

12.     The *in rem* defendant passenger vessel CHRISSY is a 29 foot vessel, and is documented under the laws of the United States of America and bears Official Number 1058205 ("CHRISSY").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

13.     The *in rem* defendant passenger vessel SEGUIN is a 44.8 foot vessel built by Frank Winchenbaugh in 1947, and is documented under the laws of the United States of America and bears Official Number 252726 ("SEGUIN").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

14.     The *in rem* defendant passenger vessel SUTTON is a 50 foot vessel built by Uniflite, Inc. in 1975, and is documented under the laws of the United States of America and bears Official Number 1194637 ("SUTTON").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

15.     The *in rem* defendant passenger vessel QUODDY DAM is a 41.1 foot vessel built in 1967, and is documented under the laws of the United States of America and bears Official Number 508529 ("QUODDY DAM").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

16.     The *in rem* defendant passenger vessel SYLVINA W. BEAL is a 71.4 foot vessel built in 1911, and is documented under the laws of the United States of America and bears Official Number 208896 ("SYLVINA W. BEAL").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

17.     The *in rem* defendant passenger vessel SEBAGO is a 62.3 foot vessel built in 1964, and is documented under the laws of the United States of America and bears Official Number 296322 ("SEBAGO").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

18.     The *in rem* defendant passenger vessel SCHOODIC is a 45.1 foot vessel built by Frank Winchenbaugh, and is documented under the laws of the United States of America and bears Official Number 255436 ("SCHOODIC").  Upon information and belief, the Vessel, including her engines, tackle, apparel, appurtenances, etc., is now or during the pendency of this action will be, located within the District of Maine, and within the jurisdiction of this Honorable Court.

19.     The *in personam* defendant, Steven F. Pagels ("Pagels"), is upon information and belief, an individual resident and domiciliary of the State of Maine, with an address at 150 Blackwoods Road, P.O. Box 25, Cherryfield, Maine 04622.  At all times material hereto, defendant Pagels was, and still is, the owner of the MARGARET TODD, PATIENCE, POLLY-LIN II, ISLAND QUEEN, FISHHAWK, SCHOODIC LION, CHRISSY, SEGUIN, SUTTON, QUODDY DAM, SYLVINA W. BEAL, SEBAGO and SCHOODIC.

20.     The *in personam* defendant, Downeast Windjammers Cruise Lines LLC ("DWCL"), is upon information and belief, a Maine limited liability company, with an office at 150 Blackwoods Road, Cherryfield, Maine 04622.

## FACTUAL ALLEGATIONS

21.     On or about December 24, 1993, Pagels for valuable consideration, executed and delivered a certain Promissory Note to plaintiff, pursuant to which plaintiff made available to Pagels a loan in the principal amount of $525,000.00 bearing Loan No. 8004102.  A copy of the Promissory Note, dated December 24, 1993, in connection with Loan No. 8004102, certain Agreements for Modification, dated December 8, 1995 and November 23, 2004, certain Allonges, dated October 24, 1998 and July 14, 2000, and certain Change in Terms Agreements,

dated November 15, 2005, December 29, 2006, November 26, 2008, September 24, 2009, and December 22, 2010 are attached hereto as Exhibit A (collectively, "Note No. 1").

22.     The indebtedness to plaintiff as evidenced by Note No. 1 is secured by, among other things, seven (7) separate Preferred Ship Mortgages, dated February 11, 2014, executed and delivered by defendant Pagels to plaintiff covering the whole of the following Vessels: SEBAGO, CHRISSY, SCHOODIC LION, FISH HAWK, ISLAND QUEEN, POLLY-LIN II, PATIENCE ("February 11 Preferred Ship Mortgages").  The February 11 Preferred Ship Mortgages were duly filed and recorded at the United States Coast Guard's National Vessel Documentation Center ("NVDC") on February 17, 2014.  A true and correct copy of the February 11 Preferred Ship Mortgages, as filed with the NVDC are attached hereto as Exhibit B.

23.     Pursuant to the terms of the February 11 Preferred Ship Mortgages at Article II(1)(a), "Events of Default" include "[d]efault in the punctual payment of the principal of the Notes secured hereby or any installment thereof…"  *See* Exhibit B.

24.     Pursuant to Article II(1)(i) of the February 11 Preferred Ship Mortgages,  in the event of a default, plaintiff, as mortgagee, may "[d]eclare the principal of said Notes and all accrued interest thereon to be and they shall then become and be due and payable forthwith…"  *See* Exhibit B.

25.     Pursuant to Article II(1)(ii) of the February 11 Preferred Ship Mortgages, in the event of a default, plaintiff, as mortgagee, may "[r]ecover judgment for, and collect out of any property of Shipowner [Pagels], any amount thereby or otherwise due hereunder, and/or collect all earned charter hire and freight monies relating to services performed by Vessel, Shipowner [Pagels] hereby assigning to Mortgagee [plaintiff] such earned charter hire and freight monies then owing…"  *See* Exhibit B.

{W4616442.1}

26.     On or about September 30, 1998, Pagels for valuable consideration, executed and delivered a certain Promissory Note to plaintiff, pursuant to which plaintiff made available to Pagels a loan in the principal amount of $625,000.00 bearing Loan No. 8004935.  A copy of the Promissory Note, dated September 30, 1998, in connection with Loan No. 8004935, a certain Allonge, dated December 7, 1998, a certain Agreement for Modification, dated November 17, 2004, and certain Change in Terms Agreements, dated November 15, 2005, December 29, 2006, November 26, 2008, September 24, 2009, and December 22, 2010 are attached hereto as Exhibit C (collectively, "Note No. 2").

27.     The indebtedness to plaintiff as evidenced by Note No. 2 is secured by, among other things, the February 11 Preferred Ship Mortgages.

28.     The indebtedness to plaintiff as evidenced by Note No. 2 is secured by, among other things, a Preferred Ship Mortgage, dated September 30, 1998, executed and delivered by defendant Pagels to plaintiff covering the whole of the MARGARET TODD and securing a principal indebtedness of $625,000.00 and the performance of other obligations ("1998 MARGARET TODD Preferred Ship Mortgage").  The 1998 MARGARET TODD Preferred Ship Mortgage was duly filed and recorded at the NVDC on October 13, 1998.  A true and correct copy of the 1998 MARGARET TODD Preferred Ship Mortgage, as filed with the NVDC, is attached hereto as Exhibit D.

29.     Pursuant to Article II(1)(A) of the 1998 MARGARET TODD Preferred Ship Mortgage,  in the event of a default, plaintiff, as mortgagee, may "[d]eclare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the highest legal rate per annum…"  *See* Exhibit D.

{W4616442.1}

30.     Pursuant to Article II(1)(B) of the 1998 MARGARET TODD Preferred Ship Mortgage, in the event of a default, plaintiff, as mortgagee, may "[r]ecover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder…" *See* Exhibit D.

31.     On or about June 18, 1999, Pagels for valuable consideration, executed and delivered a certain Promissory Note to plaintiff, pursuant to which plaintiff made available to Pagels a loan in the principal amount of $345,000.00 bearing Loan No. 8005117.  A copy of the Promissory Note, dated June 18, 1999, in connection with Loan No. 8005117, a certain Agreement for Modification, dated November 17, 2004, and certain Change in Terms Agreements, dated November 15, 2005, November 29, 2005, December 29, 2006, November 25, 2008, September 23, 2009, October 14, 2009, December 28, 2010, are attached hereto as Exhibit E (collectively, "Note No. 3").

32.     The indebtedness to plaintiff as evidenced by Note No. 3 is secured by, among other things, the February 11 Preferred Ship Mortgages.

33.     The indebtedness to plaintiff as evidenced by Note No. 3 is secured by, among other things, a Preferred Ship Mortgage, dated June 18, 1999, executed and delivered by defendant Pagels to plaintiff covering the whole of the MARGARET TODD and securing a principal indebtedness of $345,000.00 and the performance of other obligations ("1999 MARGARET TODD Preferred Ship Mortgage").  The 1999 MARGARET TODD Preferred Ship Mortgage was duly filed and recorded at the NVDC on July 1, 1999.  A true and correct copy of the 1999 MARGARET TODD Preferred Ship Mortgage, as filed with the NVDC, is attached hereto as Exhibit F.

34.     Pursuant to the terms of the 1999 MARGARET TODD Preferred Ship Mortgage, Pagels is in default if, among other reasons, "1) any payment or other sum is not paid when it is due under the Note or this Mortgage…"  *See* Exhibit F.

35.     Pursuant to the terms of the 1999 MARGARET TODD Preferred Ship Mortgage,  in the event of a default, plaintiff, as mortgagee, may "accelerate and declare immediately due and payable all unpaid principal, accrued interest, any late charges, and, as permitted by applicable law any other amounts due under the Note or this Mortgage…bring suit at law, in equity, or in admiralty to foreclose this Mortgage…."  *See* Exhibit F.

36.     On or about October 23, 2002, Pagels for valuable consideration, executed and delivered a certain Promissory Note to plaintiff, pursuant to which plaintiff made available to Pagels a loan in the principal amount of $150,270.00 bearing Loan No. 8005567.  A copy of the Promissory Note, dated October 23, 2002, in connection with Loan No. 8005567, a certain Agreement for Modification, dated November 17, 2004, and certain Change in Terms Agreements, dated November 16, 2005, December 29, 2006, September 24, 2009, October 14, 2009, and December 28, 2010, as well as an undated Change in Terms Agreement, are attached hereto as Exhibit G (collectively, "Note No. 4").

37.     The indebtedness to plaintiff as evidenced by Note No. 4 is secured by, among other things, the February 11 Preferred Ship Mortgages.

38.     On or about December 31, 2007, Pagels for valuable consideration, executed and delivered a certain Promissory Note to plaintiff, pursuant to which plaintiff made available to Pagels a loan in the principal amount of $265,000.00 bearing Loan No. 44086247.  A copy of the Promissory Note, dated December 31, 2007, in connection with Loan No. 44086247, and certain

Change in Terms Agreement, dated November 25, 2008, September 23, 2009, October 15, 2009, December 28, 2010 are attached hereto as Exhibit H (collectively, "Note No. 5").

39.    The indebtedness to plaintiff as evidenced by Note No. 5 is secured by, among other things, the February 11 Preferred Ship Mortgages.

40.    The indebtedness to plaintiff as evidenced by Note No. 5 is secured by, among other things, a Preferred Ship Mortgage, dated December 31, 2007, executed and delivered by defendant Pagels to plaintiff covering the whole of the SUTTON and securing a principal indebtedness of $265,000.00 and the performance of other obligations ("2007 SUTTON Preferred Ship Mortgage").  The 2007 SUTTON Preferred Ship Mortgage was duly filed and recorded at the NVDC on January 14, 2008.  A true and correct copy of the 2007 SUTTON Preferred Ship Mortgage, as filed with the NVDC, is attached hereto as Exhibit I.

41.    Pursuant to the terms of the 2007 SUTTON Preferred Ship Mortgage, Pagels is in default if, among other reasons, "1) any payment or other sum is not paid when it is due under the Note or this Mortgage…"  *See* Exhibit I.

42.    Pursuant to the terms of the 2007 SUTTON Preferred Ship Mortgage,  in the event of a default, plaintiff, as mortgagee, may "accelerate and declare immediately due and payable all unpaid principal, accrued interest, any late charges, and, as permitted by applicable law any other amounts due under the Note or this Mortgage…bring suit at law, in equity, or in admiralty to foreclose this Mortgage…."  *See* Exhibit I.

43.    On or about December 31, 2007, Pagels for valuable consideration, executed and delivered a certain Promissory Note to plaintiff, pursuant to which plaintiff made available to Pagels a loan in the principal amount of $100,000.00 bearing Loan No. 44086255.  A copy of the Promissory Note, dated December 31, 2007, in connection with Loan No. 44086255, and a

certain Change in Terms Agreement, dated September 23, 2009 are attached hereto as Exhibit J (collectively, "Note No. 6").

44.     The indebtedness to plaintiff as evidenced by Note No. 6 is secured by, among other things, the February 11 Preferred Ship Mortgages.

45.     On or about December 31, 2007, Pagels for valuable consideration, executed and delivered a certain Promissory Note to plaintiff, pursuant to which plaintiff made available to Pagels a loan in the principal amount of $77,000.00 bearing Loan No. 44086263.  A copy of the Promissory Note, dated December 31, 2007, in connection with Loan No. 44086263, and  a certain Change in Terms Agreement, dated November 25, 2008, are attached hereto as Exhibit K (collectively, "Note No. 7").

46.     The indebtedness to plaintiff as evidenced by Note No. 7 is secured by, among other things, the February 11 Preferred Ship Mortgages.

47.     The indebtedness to plaintiff as evidenced by Note No. 7 is secured by, among other things, a Preferred Ship Mortgage, dated December 31, 2007, executed and delivered by defendant Pagels to plaintiff covering the whole of the SCHOODIC and securing a principal indebtedness of $77,000.00 and the performance of other obligations ("2007 SCHOODIC Preferred Ship Mortgage").  The 2007 SCHOODIC Preferred Ship Mortgage was duly filed and recorded at the NVDC on January 14, 2008.  A true and correct copy of the 2007 SCHOODIC Preferred Ship Mortgage, as filed with the NVDC, is attached hereto as Exhibit L.

48.     Pursuant to the terms of the 2007 SCHOODIC Preferred Ship Mortgage, Pagels is in default if, among other reasons, "1) any payment or other sum is not paid when it is due under the Note or this Mortgage…"  *See* Exhibit L.

49.     Pursuant to the terms of the 2007 SCHOODIC Preferred Ship Mortgage, in the event of a default, plaintiff, as mortgagee, may "accelerate and declare immediately due and payable all unpaid principal, accrued interest, any late charges, and, as permitted by applicable law any other amounts due under the Note or this Mortgage…bring suit at law, in equity, or in admiralty to foreclose this Mortgage…."  *See* Exhibit L.

50.     On or about December 31, 2007, Pagels for valuable consideration, executed and delivered a certain Promissory Note to plaintiff, pursuant to which plaintiff made available to Pagels a loan in the principal amount of $38,000.00 bearing Loan No. 44086301.  A copy of the Promissory Note, dated December 31, 2007, in connection with Loan No. 44086301, and  a certain Change in Terms Agreement, dated November 25, 2008, are attached hereto as Exhibit M (collectively, "Note No. 8").

51.     The indebtedness to plaintiff as evidenced by Note No. 8 is secured by, among other things, the February 11 Preferred Ship Mortgages.

52.     The indebtedness to plaintiff as evidenced by Note No. 8 is secured by, among other things, a Preferred Ship Mortgage, dated December 31, 2007, executed and delivered by defendant Pagels to plaintiff covering the whole of the SEGUIN and securing a principal indebtedness of $38,000.00 and the performance of other obligations ("2007 SEGUIN Preferred Ship Mortgage").  The 2007 SEGUIN Preferred Ship Mortgage was duly filed and recorded at the NVDC on January 14, 2008.  A true and correct copy of the 2007 SEGUIN Preferred Ship Mortgage, as filed with the NVDC, is attached hereto as Exhibit N.

53.     Pursuant to the terms of the 2007 SEGUIN Preferred Ship Mortgage, Pagels is in default if, among other reasons, "1) any payment or other sum is not paid when it is due under the Note or this Mortgage…"  *See* Exhibit N.

54.     Pursuant to the terms of the 2007 SEGUIN Preferred Ship Mortgage, in the event of a default, plaintiff, as mortgagee, may "accelerate and declare immediately due and payable all unpaid principal, accrued interest, any late charges, and, as permitted by applicable law any other amounts due under the Note or this Mortgage…bring suit at law, in equity, or in admiralty to foreclose this Mortgage…." *See* Exhibit N.

55.     On or about February 21, 2008, Pagels for valuable consideration, executed and delivered a certain Promissory Note to plaintiff, pursuant to which plaintiff made available to Pagels a loan in the principal amount of $275,000.00 bearing Loan No. 44102188.  A copy of the Promissory Note, dated February 21, 2008 in connection with Loan No. 44102188, and certain Change in Terms Agreement, dated November 25, 2008, October 14, 2009, December 28, 2010 and September 16, 2011 are attached hereto as Exhibit O (collectively, "Note No. 9").

56.     The indebtedness to plaintiff as evidenced by Note No. 9 is secured by, among other things, the February 11 Preferred Ship Mortgages.

57.     The indebtedness to plaintiff as evidenced by Note No. 9 is secured by, among other things, a Preferred Ship Mortgage, dated September 16, 2011, executed and delivered by defendant Pagels to plaintiff covering the whole of the SYLVINA W. BEAL and securing a principal indebtedness of $90,684.29 and the performance of other obligations ("SYLVINA W. BEAL Preferred Ship Mortgage").  The SYLVINA W. BEAL Preferred Ship Mortgage was duly filed and recorded at the NVDC on November 15, 2011.  A true and correct copy of the SYLVINA W. BEAL Preferred Ship Mortgage, as filed with the NVDC, is attached hereto as Exhibit P.

58.     Pursuant to Article II(1)(A) of the SYLVINA W. BEAL Preferred Ship Mortgage,  in the event of a default, plaintiff, as mortgagee, may "[d]eclare the principal of said note and all

accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the highest legal rate per annum…" *See* Exhibit P.

59.     Pursuant to Article II(1)(B) of the SYLVINA W. BEAL Preferred Ship Mortgage, in the event of a default, plaintiff, as mortgagee, may "[r]ecover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder…" *See* Exhibit P.

60.     The indebtedness to plaintiff as evidenced by Note No. 9 is secured by, among other things, a Preferred Ship Mortgage, dated September 16, 2011, executed and delivered by defendant Pagels to plaintiff covering the whole of the QUODDY DAM and securing a principal indebtedness of $90,684.29 and the performance of other obligations ("QUODDY DAM Preferred Ship Mortgage").  The QUODDY DAM Preferred Ship Mortgage was duly filed and recorded at the NVDC on November 15, 2011.  A true and correct copy of the QUODDY DAM Preferred Ship Mortgage, as filed with the NVDC, is attached hereto as Exhibit Q.[1]

61.     Pursuant to Article II(1)(A) of the QUODDY DAM Preferred Ship Mortgage,  in the event of a default, plaintiff, as mortgagee, may "[d]eclare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the highest legal rate per annum…" *See* Exhibit Q.

62.     Pursuant to Article II(1)(B) of the QUODDY DAM Preferred Ship Mortgage, in the event of a default, plaintiff, as mortgagee, may "[r]ecover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder…" *See* Exhibit Q.

63.     On or about February 21, 2008, Pagels for valuable consideration, executed and delivered a certain Promissory Note to plaintiff, pursuant to which plaintiff made available to Pagels a loan in the principal amount of $175,000.00 bearing Loan No. 44102501.  A copy of the

---

[1] Regarding Exhibit Q, plaintiff has misplaced the third page of the mortgage.  As it is a form mortgage, plaintiff is aware of the applicable provisions and language in the mortgage.  In addition, as a copy of this mortgage is on file with the NVDC, plaintiff will request a copy of the entire mortgage and supplement this filing upon receipt.

Promissory Note, dated February 21, 2008 in connection with Loan No. 44102501, and certain Change in Terms Agreement, dated September 23, 2009, October 14, 2009, December 28, 2010, are attached hereto as Exhibit R(collectively, "Note No. 10").

64.     The indebtedness to plaintiff as evidenced by Note No. 10 is secured by, among other things, the February 11 Preferred Ship Mortgages.

65.     On or about October 21, 2011, Pagels for valuable consideration, executed and delivered a certain Promissory Note to plaintiff, pursuant to which plaintiff made available to Pagels a loan in the principal amount of $279,165.00 bearing Loan No. 44136511.  A copy of the Promissory Note dated October 21, 2011 in connection with Loan No. 44136511, is attached hereto as Exhibit S ("Note No. 11").

66.     The indebtedness to plaintiff as evidenced by Note No. 11 is secured by, among other things, the February 11 Preferred Ship Mortgages.

67.     On or about December 24, 2013, Pagels, DWCL and plaintiff executed a certain Restructuring Agreement.  A copy of the Restructuring Agreement, dated December 24, 2013 is attached hereto as Exhibit T.  ("Restructuring Agreement").

68.     Pursuant to the Restructuring Agreement, Pagels, DWCL and plaintiff affirmed the binding nature of Note Nos. 1 through 11.

69.     Pursuant to the Restructuring Agreement, DWCL was "made a borrower with respect to the Obligations [of Pagels]" and "assume[d] and agree[d] to pay all of the Obligations, as a joint obligor with [Pagels], as if DWCL was an original borrower under and party to the [Note Nos. 1 through 11]." *See* Exhibit T.

70.     Pursuant to the Restructuring Agreement, in the event of any failure by DWCL and Pagels to perform their obligations under the Restructuring Agreement or under Note Nos. 1

through 11, plaintiff is "entitled to pursue all of its rights and remedies as an unpaid creditor, and to enforce the Obligations and [Note Nos. 1 through 11] in full, with full recourse." *See* Exhibit T.

71.     DWCL and Pagels have failed to perform their obligations under the Restructuring Agreement by, among other things, failing to make payments as agreed.

72.     The indebtedness to plaintiff as evidenced by the Restructuring Agreement is secured by, among other things, the February 11 Preferred Ship Mortgages.

73.     The indebtedness to plaintiff as evidenced by the Restructuring Agreement is secured by, among other things, the 2007 SUTTON Preferred Ship Mortgage.

74.     The indebtedness to plaintiff as evidenced by the Restructuring Agreement is secured by, among other things, a Preferred Ship Mortgage, dated November 26, 2008, executed and delivered by defendant Pagels to plaintiff covering the whole of the SUTTON and securing a principal indebtedness of $155,000.00 and the performance of other obligations ("2008 SUTTON Preferred Ship Mortgage"). The 2008 SUTTON Preferred Ship Mortgage was duly filed and recorded at the NVDC on December 4, 2008. A true and correct copy of the 2008 SUTTON Preferred Ship Mortgage, as filed with the NVDC, is attached hereto as Exhibit U.

75.     Pursuant to the terms of the 2008 SUTTON Preferred Ship Mortgage, Pagels is in default if, among other reasons, "1) any payment or other sum is not paid when it is due under the Note or this Mortgage…" *See* Exhibit U.

76.     Pursuant to the terms of the 2008 SUTTON Preferred Ship Mortgage, in the event of a default, plaintiff, as mortgagee, may "accelerate and declare immediately due and payable all unpaid principal, accrued interest, any late charges, and, as permitted by applicable law any other

amounts due under the Note or this Mortgage…bring suit at law, in equity, or in admiralty to foreclose this Mortgage….” *See* Exhibit U.

77.     The indebtedness to plaintiff as evidenced by the Restructuring Agreement is secured by, among other things, the 2007 SEGUIN Preferred Ship Mortgage.

78.     The indebtedness to plaintiff as evidenced by the Restructuring Agreement is secured by, among other things, a Preferred Ship Mortgage, dated November 26, 2008, executed and delivered by defendant Pagels to plaintiff covering the whole of the SEGUIN and securing a principal indebtedness of $155,000.00 and the performance of other obligations (“2008 SEGUIN Preferred Ship Mortgage”).  The 2008 SEGUIN Preferred Ship Mortgage was duly filed and recorded at the NVDC on December 4, 2008.  A true and correct copy of the 2008 SEGUIN Preferred Ship Mortgage, as filed with the NVDC, is attached hereto as Exhibit V.

79.     Pursuant to the terms of the 2008 SEGUIN Preferred Ship Mortgage, Pagels is in default if, among other reasons, “1) any payment or other sum is not paid when it is due under the Note or this Mortgage…” *See* Exhibit V.

80.     Pursuant to the terms of the 2008 SEGUIN Preferred Ship Mortgage, in the event of a default, plaintiff, as mortgagee, may “accelerate and declare immediately due and payable all unpaid principal, accrued interest, any late charges, and, as permitted by applicable law any other amounts due under the Note or this Mortgage…bring suit at law, in equity, or in admiralty to foreclose this Mortgage….” *See* Exhibit V.

81.     The indebtedness to plaintiff as evidenced by the Restructuring Agreement is secured by, among other things, the 1998 MARGARET TODD Preferred Ship Mortgage.

82.     The indebtedness to plaintiff as evidenced by the Restructuring Agreement is secured by, among other things, the 1999 MARGARET TODD Preferred Ship Mortgage.

83.     The indebtedness to plaintiff as evidenced by the Restructuring Agreement is secured by, among other things, a Preferred Ship Mortgage, dated November 26, 2008, executed and delivered by defendant Pagels to plaintiff covering the whole of the MARGARET TODD and securing a principal indebtedness of $155,000.00 and the performance of other obligations ("2008 MARGARET TODD Preferred Ship Mortgage").  The 2008 MARGARET TODD Preferred Ship Mortgage was duly filed and recorded at the NVDC on December 4, 2008.  A true and correct copy of the 2008 MARGARET TODD Preferred Ship Mortgage, as filed with the NVDC, is attached hereto as Exhibit W.

84.     Pursuant to the terms of the 2008 MARGARET TODD Preferred Ship Mortgage, Pagels is in default if, among other reasons, "1) any payment or other sum is not paid when it is due under the Note or this Mortgage…"  *See* Exhibit W.

85.     Pursuant to the terms of the 2008 MARGARET TODD Preferred Ship Mortgage, in the event of a default, plaintiff, as mortgagee, may "accelerate and declare immediately due and payable all unpaid principal, accrued interest, any late charges, and, as permitted by applicable law any other amounts due under the Note or this Mortgage…bring suit at law, in equity, or in admiralty to foreclose this Mortgage…."  *See* Exhibit W.

86.     The indebtedness to plaintiff as evidenced by the Restructuring Agreement is secured by, among other things, the 2007 SCHOODIC Preferred Ship Mortgage.

87.     The indebtedness to plaintiff as evidenced by the Restructuring Agreement is secured by, among other things, a Preferred Ship Mortgage, dated November 26, 2008, executed and delivered by defendant Pagels to plaintiff covering the whole of the SCHOODIC and securing a principal indebtedness of $155,000.00 and the performance of other obligations ("2008 SCHOODIC Preferred Ship Mortgage").  The 2008 SCHOODIC Preferred Ship Mortgage was

duly filed and recorded at the NVDC on December 4, 2008.  A true and correct copy of the 2008 SCHOODIC Preferred Ship Mortgage, as filed with the NVDC, is attached hereto as Exhibit X.

88.     Pursuant to the terms of the 2008 SCHOODIC Preferred Ship Mortgage, Pagels is in default if, among other reasons, "1) any payment or other sum is not paid when it is due under the Note or this Mortgage…"  *See* Exhibit X.

89.     Pursuant to the terms of the 2008 SCHOODIC Preferred Ship Mortgage, in the event of a default, plaintiff, as mortgagee, may "accelerate and declare immediately due and payable all unpaid principal, accrued interest, any late charges, and, as permitted by applicable law any other amounts due under the Note or this Mortgage…bring suit at law, in equity, or in admiralty to foreclose this Mortgage…."  *See* Exhibit X.

90.     The indebtedness to plaintiff as evidenced by the Restructuring Agreement is secured by, among other things, the QUODDY DAM Preferred Ship Mortgage.

91.     The indebtedness to plaintiff as evidenced by the Restructuring Agreement is secured by, among other things, the SYLVINA W. BEAL Preferred Ship Mortgage.

### COUNT I – ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the SEBAGO *in rem*)

92.     The allegations of paragraph nos. 1 through 91 of this Verified Complaint are incorporated as if fully set forth herein.

93.     Defendant Pagels has defaulted under the terms of the February 11 Preferred Ship Mortgages, which includes the Preferred Ship Mortgage encumbering the SEBAGO and dated February 11, 2014, pursuant to Article II(1)(a)  by, among other things, failing to make punctual payment under Note Nos. 1 through 11 and the Restructuring Agreement.

94.     As of February 13, 2015, there was an outstanding indebtedness of $1,766,168.37 under Note Nos.1 through 11 and the Restructuring Agreement which sum includes principal,

interest and late fees.  Additional indebtedness will continue to accrue until this action is concluded and the terms of Note Nos. 1 through 11 and the Restructuring Agreement.

95.     By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the SEBAGO in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the SEBAGO *in rem*.

## COUNT III– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the CHRISSY *in rem*)

96.     The allegations of paragraph nos. 1 through 95 of this Verified Complaint are incorporated as if fully set forth herein.

97.     Defendant Pagels has defaulted under the terms of the February 11 Preferred Ship Mortgages, which includes the Preferred Ship Mortgage encumbering the CHRISSY and dated February 11, 2014, pursuant to Article II(1)(a)  by, among other things, failing to make punctual payment under Note Nos. 1 through 11 and the Restructuring Agreement.

98.     As of February 13, 2015, there was an outstanding indebtedness of $1,766,168.37 under Note Nos.1 through 11 and the Restructuring Agreement, which sum includes principal, interest and late fees.  Additional indebtedness will continue to accrue until this action is concluded and the terms of Note Nos. 1 through 11 and the Restructuring Agreement are satisfied.

99.     By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the CHRISSY in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the CHRISSY *in rem*.

## COUNT IV– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the SCHOODIC LION *in rem*)

100.    The allegations of paragraph nos. 1 through 99 of this Verified Complaint are

incorporated as if fully set forth herein.

101.    Defendant Pagels has defaulted under the terms of the February 11 Preferred Ship

Mortgages, which includes the Preferred Ship Mortgage encumbering the SCHOODIC LION

and dated February 11, 2014, pursuant to Article II(1)(a)  by, among other things, failing to make

punctual payment under Note Nos. 1 through 11 and the Restructuring Agreement.

102.    As of February 13, 2015, there was an outstanding indebtedness of $1,766,168.37

under Note Nos.1 through 11 and the Restructuring Agreement, which sum includes principal,

interest and late fees.  Additional indebtedness will continue to accrue until this action is

concluded and the terms of Note Nos. 1 through 11 and the Restructuring Agreement are

satisfied.

103.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act,

46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the

SCHOODIC LION in the amount of the outstanding indebtedness secured thereby and is entitled

to enforce its preferred mortgage lien against the SCHOODIC LION *in rem*.

## COUNT V– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the FISH HAWK *in rem*)

104.    The allegations of paragraph nos. 1 through 103 of this Verified Complaint are

incorporated as if fully set forth herein.

105.    Defendant Pagels has defaulted under the terms of the February 11 Preferred Ship

Mortgages, which includes the Preferred Ship Mortgage encumbering the FISH HAWK and

dated February 11, 2014, pursuant to Article II(1)(a)  by, among other things, failing to make punctual payment under Note Nos. 1 through 11 and the Restructuring Agreement.

106.    As of February 13, 2015, there was an outstanding indebtedness of $1,766,168.37 under Note Nos.1 through 11 and the Restructuring Agreement, which sum includes principal, interest and late fees.  Additional indebtedness will continue to accrue until this action is concluded and the terms of Note Nos. 1 through 11 and the Restructuring Agreement are satisfied.

107.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the FISH HAWK in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the FISH HAWK *in rem*.

### COUNT VI– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the ISLAND QUEEN *in rem*)

108.    The allegations of paragraph nos. 1 through 107 of this Verified Complaint are incorporated as if fully set forth herein.

109.    Defendant Pagels has defaulted under the terms of the February 11 Preferred Ship Mortgages, which includes the Preferred Ship Mortgage encumbering the ISLAND QUEEN and dated February 11, 2014, pursuant to Article II(1)(a)  by, among other things, failing to make punctual payment under Note Nos. 1 through 11 and the Restructuring Agreement.

110.    As of February 13, 2015, there was an outstanding indebtedness of $1,766,168.37 under Note Nos.1 through 11 and the Restructuring Agreement, which sum includes principal, interest and late fees.  Additional indebtedness will continue to accrue until this action is concluded and the terms of Note Nos. 1 through 11 and the Restructuring Agreement are satisfied.

111.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the ISLAND QUEEN in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the ISLAND QUEEN *in rem*.

## COUNT VII– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the POLLY-LIN II *in rem*)

112.    The allegations of paragraph nos. 1 through 111 of this Verified Complaint are incorporated as if fully set forth herein.

113.    Defendant Pagels has defaulted under the terms of the February 11 Preferred Ship Mortgages, which includes the Preferred Ship Mortgage encumbering the POLLY-LIN II and dated February 11, 2014, pursuant to Article II(1)(a)  by, among other things, failing to make punctual payment under Note Nos. 1 through 11 and the Restructuring Agreement.

114.    As of February 13, 2015, there was an outstanding indebtedness of $1,766,168.37 under Note Nos.1 through 11 and the Restructuring Agreement, which sum includes principal, interest and late fees.  Additional indebtedness will continue to accrue until this action is concluded and the terms of Note Nos. 1 through 11 and the Restructuring Agreement are satisfied.

115.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the POLLY-LIN II in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the POLLY-LIN II *in rem*.

## COUNT VIII– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the PATIENCE *in rem*)

116.     The allegations of paragraph nos. 1 through 115 of this Verified Complaint are

incorporated as if fully set forth herein.

117.     Defendant Pagels has defaulted under the terms of the February 11 Preferred Ship

Mortgages, which includes the Preferred Ship Mortgage encumbering the PATIENCE and dated

February 11, 2014, pursuant to Article II(1)(a)  by, among other things, failing to make punctual

payment under Note Nos. 1 through 11 and the Restructuring Agreement.

118.     As of February 13, 2015, there was an outstanding indebtedness of $1,766,168.37

under Note Nos.1 through 11 and the Restructuring Agreement, which sum includes principal,

interest and late fees.  Additional indebtedness will continue to accrue until this action is

concluded and the terms of Note Nos. 1 through 11 and the Restructuring Agreement are

satisfied.

119.     By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act,

46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the

PATIENCE in the amount of the outstanding indebtedness secured thereby and is entitled to

enforce its preferred mortgage lien against the PATIENCE *in rem*.

## COUNT IX– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the MARGARET TODD *in rem*)

120.     The allegations of paragraph nos. 1 through 119 of this Verified Complaint are

incorporated as if fully set forth herein.

121.     Defendant Pagels has defaulted under the terms of the 1998 MARGARET TODD

Preferred Ship Mortgage by, among other things, failing to make punctual payment under Note

No. 2 and the Restructuring Agreement.

122.    As of February 13, 2015, there was an outstanding indebtedness of $387,839.85 under Note No. 2 and $1,766,168.37 under the Restructuring Agreement, which sums include principal, interest and late fees.  Additional indebtedness will continue to accrue until this action is concluded and the terms of Note No. 2 and the Restructuring Agreement are satisfied.

123.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the MARGARET TODD in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the MARGARET TODD *in rem*.

## COUNT X– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the MARGARET TODD *in rem*)

124.    The allegations of paragraph nos. 1 through 123 of this Verified Complaint are incorporated as if fully set forth herein.

125.    Defendant Pagels has defaulted under the terms of the 1999 MARGARET TODD Preferred Ship Mortgage by, among other things, failing to make punctual payment under Note No. 3 and the Restructuring Agreement.

126.    As of February 13, 2015, there was an outstanding indebtedness of $229,444.99 under Note No. 3 and $1,766,168.37 under the Restructuring Agreement, which sum includes principal, interest and late fees.  Additional indebtedness will continue to accrue until this action is concluded and the terms of Note No. 3 and the Restructuring Agreement are satisfied.

127.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the MARGARET TODD in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the MARGARET TODD *in rem*.

{W4616442.1}

## COUNT XI– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the SUTTON *in rem*)

128.     The allegations of paragraph nos. 1 through 127 of this Verified Complaint are

incorporated as if fully set forth herein.

129.     Defendant Pagels has defaulted under the terms of the 2007 SUTTON Preferred Ship

Mortgage by, among other things, failing to make punctual payment under Note No. 5 and the

Restructuring Agreement.

130.     As of February 13, 2015, there was an outstanding indebtedness of $234,915.40 under

Note No. 5 and $1,766,168.37 under the Restructuring Agreement, which sum includes principal,

interest and late fees.  Additional indebtedness will continue to accrue until this action is

concluded and the terms of Note No. 5 and the Restructuring Agreement are satisfied.

131.     By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act,

46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the

SUTTON in the amount of the outstanding indebtedness secured thereby and is entitled to

enforce its preferred mortgage lien against the SUTTON *in rem*.

## COUNT XII– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the SCHOODIC *in rem*)

132.     The allegations of paragraph nos. 1 through 131 of this Verified Complaint are

incorporated as if fully set forth herein.

133.     Defendant Pagels has defaulted under the terms of the 2007 SCHOODIC Preferred

Ship Mortgage by, among other things, failing to make punctual payment under Note No. 7 and

the Restructuring Agreement.

134.     As of February 13, 2015, there was an outstanding indebtedness of $59,014.86 under

Note No. 7 and $1,766,168.37 under the Restructuring Agreement, which sum includes principal,

interest and late fees.  Additional indebtedness will continue to accrue until this action is concluded and the terms of Note No. 7 and the Restructuring Agreement are satisfied.

135.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the SCHOODIC in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the SCHOODIC *in rem*.

## COUNT XIII– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the SEGUIN *in rem*)

136.    The allegations of paragraph nos. 1 through 136 of this Verified Complaint are incorporated as if fully set forth herein.

137.    Defendant Pagels has defaulted under the terms of the 2007 SEGUIN Preferred Ship Mortgage by, among other things, failing to make punctual payment under Note No. 8 and the Restructuring Agreement.

138.    As of February 13, 2015, there was an outstanding indebtedness of $29,187.00 under Note No. 8 and $1,766,168.37 under the Restructuring Agreement, which sum includes principal, interest and late fees.  Additional indebtedness will continue to accrue until this action is concluded and the terms of Note No. 8 and the Restructuring Agreement are satisfied.

139.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the SEGUIN in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the SEGUIN *in rem*.

## COUNT XIV– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
## (Against the SYLVINA W. BEAL *in rem*)

140.    The allegations of paragraph nos. 1 through 139 of this Verified Complaint are

incorporated as if fully set forth herein.

141.    Defendant Pagels has defaulted under the terms of the SYLVINA W. BEAL

Preferred Ship Mortgage by, among other things, failing to make punctual payment under Note

No. 9 and the Restructuring Agreement.

142.    As of February 13, 2015, there was an outstanding indebtedness of $92,765.73 under

Note No. 9 and $1,766,168.37 under the Restructuring Agreement, which sum includes principal,

interest and late fees.  Additional indebtedness will continue to accrue until this action is

concluded and the terms of Note No. 9 and the Restructuring Agreement are satisfied.

143.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act,

46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the

SYLVINA W. BEAL in the amount of the outstanding indebtedness secured thereby and is

entitled to enforce its preferred mortgage lien against the SYLVINA W. BEAL *in rem*.

## COUNT XV– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
## (Against the QUODDY DAM *in rem*)

144.    The allegations of paragraph nos. 1 through 143 of this Verified Complaint are

incorporated as if fully set forth herein.

145.    Defendant Pagels has defaulted under the terms of the QUODDY DAM Preferred

Ship Mortgage by, among other things, failing to make punctual payment under Note No. 9 and

the Restructuring Agreement.

146.    As of February 13, 2015, there was an outstanding indebtedness of $92,765.73 under

Note No. 9 and $1,766,168.37 under the Restructuring Agreement, which sum includes principal,

{W4616442.1}

interest and late fees.  Additional indebtedness will continue to accrue until this action is concluded and the terms of Note No. 9 and the Restructuring Agreement are satisfied.

147.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the QUODDY DAM in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the QUODDY DAM *in rem*.

### COUNT XVI– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the SUTTON *in rem*)

148.    The allegations of paragraph nos. 1 through 147 of this Verified Complaint are incorporated as if fully set forth herein.

149.    Defendant Pagels has defaulted under the terms of the 2008 SUTTON Preferred Ship Mortgage by, among other things, failing to make punctual payment under the Restructuring Agreement.

150.    As of February 13, 2015, there was an outstanding indebtedness of $1,766,168.37 under the Restructuring Agreement, which sum includes principal, interest and late fees. Additional indebtedness will continue to accrue until this action is concluded and the terms of the Restructuring Agreement are satisfied.

151.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the SUTTON in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the SUTTON *in rem*.

## COUNT XVII– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### (Against the SEGUIN *in rem*)

152.    The allegations of paragraph nos. 1 through 151 of this Verified Complaint are

incorporated as if fully set forth herein.

153.    Defendant Pagels has defaulted under the terms of the 2008 SEGUIN Preferred Ship

Mortgage by, among other things, failing to make punctual payment under the Restructuring

Agreement.

154.    As of February 13, 2015, there was an outstanding indebtedness of $1,766,168.37

under the Restructuring Agreement, which sum includes principal, interest and late fees.

Additional indebtedness will continue to accrue until this action is concluded and the terms of

the Restructuring Agreement are satisfied.

155.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act,

46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the

SEGUIN in the amount of the outstanding indebtedness secured thereby and is entitled to enforce

its preferred mortgage lien against the SEGUIN *in rem*.

## COUNT XVIII– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
### Against the MARGARET TODD *in rem*)

156.    The allegations of paragraph nos. 1 through 155 of this Verified Complaint are

incorporated as if fully set forth herein.

157.    Defendant Pagels has defaulted under the terms of the 2008 MARGARET TODD

Preferred Ship Mortgage by, among other things, failing to make punctual payment under the

Restructuring Agreement.

158.    As of February 13, 2015, there was an outstanding indebtedness of $1,766,168.37

under the Restructuring Agreement, which sum includes principal, interest and late fees.

{W4616442.1}

Additional indebtedness will continue to accrue until this action is concluded and the terms of the Restructuring Agreement are satisfied.

159.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the MARGARET TODD in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the MARGARET TODD *in rem*.

**COUNT XIX– ENFORCEMENT OF PREFERRED SHIP MORTGAGE
<u>Against the SCHOODIC *in rem*</u>)**

160.    The allegations of paragraph nos. 1 through 159 of this Verified Complaint are incorporated as if fully set forth herein.

161.    Defendant Pagels has defaulted under the terms of the 2008 SCHOODIC Preferred Ship Mortgage by, among other things, failing to make punctual payment under the Restructuring Agreement.

162.    As of February 13, 2015, there was an outstanding indebtedness of $1,766,168.37 under the Restructuring Agreement, which sum includes principal, interest and late fees. Additional indebtedness will continue to accrue until this action is concluded and the terms of the Restructuring Agreement are satisfied.

163.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, plaintiff holds a valid and enforceable preferred mortgage lien on the SCHOODIC in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the SCHOODIC  *in rem*.

## COUNT XX – ENFORCEMENT OF PREFERRED SHIP MORTGAGES
### (Against Pagels as Vessel Owner *in personam*)

164.    The allegations of paragraph nos. 1 through 163 of this Verified Complaint are incorporated as if fully set forth herein.

165.    Defendant Pagels has defaulted under the terms of the February 11 Preferred Ship Mortgages, the 1998 MARGARET TODD Preferred Ship Mortgage, the 1999 MARGARET TODD Preferred Ship Mortgage, the 2008 MARGARET TODD Preferred Ship Mortgage, the 2007 SUTTON Preferred Ship Mortgage, the 2008 SUTTON Preferred Ship Mortgage, the 2007 SEGUIN Preferred Ship Mortgage, the 2008 SEGUIN Preferred Ship Mortgage, the 2007 SCHOODIC Preferred Ship Mortgage, the 2008 SCHOODIC Preferred Ship Mortgage, the QUODDY DAM Preferred Ship Mortgage and the SYLVINA W. BEAL Preferred Ship Mortgage, among other things, failing to make punctual payment under Note Nos. 1 through 5 and 7 through 11 and the Restructuring Agreement.

166.    As of February 13, 2015, there was an outstanding indebtedness of $1,766,168.37 under Note Nos. 1 through 11 and Restructuring Agreement, which sum includes principal, interest and late fees.  Additional indebtedness will continue to accrue until this action is concluded and the terms of Note Nos. 1 through 5 and 7 through 11 and the Restructuring Agreement are satisfied.

167.    By virtue of the Mortgage and the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301-31343, defendant Pagels is liable for the outstanding indebtedness or for any deficiency that remains due after applying the proceeds from the sale of the defendant Vessels to the outstanding indebtedness.

## COUNT XXI – BREACH OF CONTRACT
### (Against Pagels *in personam* for Breach of Restructuring Agreement and Note Nos. 1-11)

168.    The allegations of paragraph nos. 1 through 167 of this Verified Complaint are incorporated as if fully set forth herein.

169.    Pursuant to the Restructuring Agreement, Pagels, DWCL and plaintiff affirmed the binding nature of Note Nos. 1 through 11.

170.    Pursuant to the Restructuring Agreement, in the event of any failure by DWCL and Pagels to perform their obligations under the Restructuring Agreement or under Note Nos. 1 through 11, plaintiff is "entitled to pursue all of its rights and remedies as an unpaid creditor, and to enforce the Obligations and [Note Nos. 1 through 11] in full, with full recourse."

171.    Pagels has failed to perform his obligations under the Restructuring Agreement and Note Nos. 1 through 5 and 7 through 11 by, among other things, failing to make payments as agreed.

172.    As a result of the above, Pagels has breached the terms of the Restructuring Agreement and Note Nos. 1 through 5 and 7 through 11 and plaintiff is entitled to judgment on the outstanding indebtedness, including outstanding principal, interest, and late fees, plus collection and recovery costs, attorneys' fees and expenses.

## COUNT XXII – BREACH OF CONTRACT
### (Against DWCL *in personam* for Breach of Restructuring Agreement and Note Nos. 1-11)

173.    The allegations of paragraph nos. 1 through 172 of this Verified Complaint are incorporated as if fully set forth herein.

174.    Pursuant to the Restructuring Agreement, Pagels, DWCL and plaintiff affirmed the binding nature of Note Nos. 1 through 11.

175.    Pursuant to the Restructuring Agreement, DWCL was "made a borrower with respect to the Obligations [of Pagels]" and "assume[d] and agree[d] to pay all of the Obligations, as a joint obligor with [Pagels], as if DWCL was an original borrower under and party to the [Note Nos. 1 through 11]."

176.    Pursuant to the Restructuring Agreement, in the event of any failure by DWCL and Pagels to perform their obligations under the Restructuring Agreement or under Note Nos. 1 through 11, plaintiff is "entitled to pursue all of its rights and remedies as an unpaid creditor, and to enforce the Obligations and [Note Nos. 1 through 11] in full, with full recourse."

177.    DWCL has failed to perform its obligations under Note Nos. 1 through 5 and 7 through 11 and the Restructuring Agreement by, among other things, failing to make payments as agreed.

178.    As a result of the above, DWCL has breached the terms of Note Nos. 1 through 5 and 7 through 11 and the Restructuring Agreement and plaintiff is entitled to judgment on the outstanding indebtedness, including outstanding principal, interest, and late fees, plus collection and recovery costs, attorneys' fees and expenses.

WHEREFORE, Plaintiff prays that this Honorable Court adjudge as follows:

A.    That *in rem* process, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction, may issue against the whole of the MARGARET TODD, PATIENCE, POLLY-LIN II, ISLAND QUEEN, FISHHAWK, SCHOODIC LION, CHRISSY, SEGUIN, SUTTON, QUODDY DAM, SYLVINA W. BEAL, SEBAGO and SCHOODIC, and to each of her components, together with her engines, tackle, apparel, appurtenances, etc., pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Action of the Federal Rules of Civil Procedure.

B.     That all persons or entities having or claiming any interests in the Vessel be cited to appear and answer under oath;

C.     That as to Counts I through XIX, plaintiff, The First, N.A.'s, claim be adjudged valid and enforceable preferred mortgage liens against the whole of the MARGARET TODD, PATIENCE, POLLY-LIN II, ISLAND QUEEN, FISHHAWK, SCHOODIC LION, CHRISSY, SEGUIN, SUTTON, QUODDY DAM, SYLVINA W. BEAL, SEBAGO and SCHOODIC, and to each of her components, together with her engines, tackle, apparel, appurtenances, etc., and *in rem* judgment entered in favor of plaintiff, The First, N.A., against the MARGARET TODD, PATIENCE, POLLY-LIN II, ISLAND QUEEN, FISHHAWK, SCHOODIC LION, CHRISSY, SEGUIN, SUTTON, QUODDY DAM, SYLVINA W. BEAL, SEBAGO and SCHOODIC for the full amount of its liquidated and unliquidated damages, together with prejudgment interest, cost and expenses, including attorneys' fees, and other damages which may be shown at trial;

D.     That as to Counts I through XIX, pursuant to 46 U.S.C. § 31326(a), the whole of the MARGARET TODD, PATIENCE, POLLY-LIN II, ISLAND QUEEN, FISHHAWK, SCHOODIC LION, CHRISSY, SEGUIN, SUTTON, QUODDY DAM, SYLVINA W. BEAL, SEBAGO and SCHOODIC, and each of her components, together with her engines, tackle, apparel, appurtenances, etc., be condemned and sold to satisfy the claims of plaintiff, The First, N.A.;

E.     That as to Count XX, process in due form of law according to the rules and practices of this Honorable Court in causes of admiralty and maritime jurisdiction issue against the *in personam* defendant, Steven F. Pagels, citing him to appear and answer to each and all of the maters aforesaid;

F.      That as to Count XX, judgment enter in favor of plaintiff, The First, N.A., against the *in personam* defendant, Steven F. Pagels, in the full amount of its liquidated and unliquidated damages, including any outstanding deficiency which may exist subsequent to the condemnation and sale of the Vessel, together with prejudgment interest, costs and expenses, including attorneys' fees, and other damages which may be shown at trial;

G.      That as to Count XXI, judgment enter in favor of plaintiff, The First, N.A., against the *in personam* defendant, Steven F. Pagels, in the full amount of its liquidated and unliquidated damages, including any outstanding deficiency which may exist subsequent to the condemnation and sale of the Vessel, together with prejudgment interest, costs and expenses, including attorneys' fees, and other damages which may be shown at trial;

H.      That as to Count XXII, judgment enter in favor of plaintiff, The First, N.A., against the *in personam* defendant, Downeast Windjammers Cruise Lines LLC, in the full amount of its liquidated and unliquidated damages, including any outstanding deficiency which may exist subsequent to the condemnation and sale of the Vessel, together with prejudgment interest, costs and expenses, including attorneys' fees, and other damages which may be shown at trial; and,

I.      That plaintiff, The First, N.A., have such other and further relief as this Honorable Court may deem just and proper under the circumstances.

Respectfully submitted,

THE FIRST, N.A.

By its Attorneys,
PIERCE ATWOOD LLP


Dated: Portland, Maine
       February 13, 2015           /s/ *Jacob A. Manheimer*
                                      Jacob A. Manheimer, Esq.
                                      254 Commercial Street
                                      Portland, ME  04101
                                      Ph:  (207) 791-1338
                                      Fax: (207) 791-1350
                                      jmanheimer@pierceatwood.com


## CERTIFICATE OF SERVICE

       I, Jacob A. Manheimer, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 13, 2015.

                                        /s/ *Jacob A. Manheimer*
                                        Jacob A. Manheimer, Esq.
                                        Pierce Atwood LLP
                                        254 Commercial Street
                                        Portland, ME  04101
                                        Ph:  (207) 791-1338
                                        Fax: (207) 791-1350
                                        jmanheimer@pierceatwood.com

{W4616442.1}